J-A05043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS ROBINSON, | |
| Appellant | No. 269 EDA 2015 |

Appeal from the Judgment of Sentence September 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005071-2012

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 26, 2016**

This is an appeal from the judgment of sentence imposed after a jury convicted Appellant of second-degree murder, robbery, and conspiracy to commit robbery.[1]  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> On September 29, 2011, into the early morning hours of September 30, 2011, [the victim] met with friends at J's Big Shot Lounge, a bar at the corner of Stenton Avenue and Narragansett Street in Philadelphia.  [The victim] had recently purchased a Buick LeSabre, which he parked on the street near the bar.
>
> While [the victim] was in the bar, [Appellant] was on the street outside that bar with Daniel Riley, Terell Toson, Derick

---

[1] **See** 18 Pa.C.S.A. §§ 2502, 3701, and 903, respectively.

*Former Justice specially assigned to the Superior Court.

Toliver, and Markese Martin. Riley stated that he wanted to rob [the victim] who was known by the group to sell drugs in that area. Each member of the group agreed to rob [the victim]. While [the victim] was still inside the bar, Riley left the scene in order to obtain a firearm. Before leaving, Riley directed [Appellant] and Toson to break the window of [the victim's] car, in order to delay [the victim] should he try to leave the bar before Riley returned. Toson attempted to break the car window with a rock, but was unsuccessful. [Appellant] then took a larger rock and threw it through the car window, breaking it. [Appellant] and Toson then walked away from the car without entering it or taking anything from it. Riley returned with the gun shortly after the window was broken. [Appellant] and Riley stood near the bar awaiting [the victim's] exit, while Toson, Martin, and Toliver stayed down the street.

[The victim] stayed in the bar until approximately 3:15 a.m. Upon leaving, he was accompanied by his friend[,] Warren Roane, the bar manager, Julie Fluellen, the barmaid Mae, and the victim's ex-girlfriend, Missy. They were going to go eat breakfast together after the bar closed.

After leaving the bar, [the victim] went to his car with Mae, where he was confronted by [Appellant] and Riley. Riley ordered [the victim] to "give it up" while pointing his gun at [the victim's] chest. [The victim] told Riley "you goin' have to shoot me" and pushed the gun away. Riley then fired multiple shots at [the victim] as [the victim] began to flee back towards the bar. [Appellant] picked up two phones which had fallen to the ground during the shooting, a flip phone and a smart phone. [Appellant] and Riley then fled down Narragansett Street, away from the bar. Surveillance cameras captured the entire incident on video.

[The victim] was shot in the left side and leg. [The victim] told Roane he knew who shot him, though he never stated a name before dying. [The victim] and his friends flagged down a police vehicle that was in the area, which transported him to Einstein Hospital. [The victim] did not regain consciousness while in the hospital and eventually died on October 8, 2011.

[Appellant], Riley, Toson, Toliver, and [Martin] later met at Toson's house. While at Toson's house, [Appellant] gave the flip phone that he had picked up to Toson, while keeping the smart phone for himself. The flip phone belonged to [the victim].

> [Appellant] was transported to the Homicide Unit on December 9, 2011, where he waived his Miranda rights and gave a statement. [Appellant] informed the police that he had broken the window to [the victim's] vehicle and then had picked up the two dropped phones on the street after the shooting. However, [Appellant] denied conspiring to rob [the victim].

Trial Court Opinion, 3/30/15, at 2-4 (citations and footnotes omitted).

Appellant and Riley were tried together. Appellant was found guilty of the aforementioned crimes, and the trial court immediately sentenced him to mandatory life in prison for his second-degree murder conviction.[2] This timely appeal follows. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

**A.**

**Whether the trial court improperly denied Appellant's request for an instruction to the jury as to the defense theory of the case – that Appellant's acts constituted the crimes of conspiracy and attempt to commit theft for the victim's automobile and not conspiracy to rob, and robbery of the victim?**

**B.**

**Whether the trial court erred in denying the defense request for an instruction to the jury that [Appellant] was in no way involved in co-defendant Riley's sudden violent**

---

[2] Riley was convicted on all charges, including first-degree murder, and the trial court immediately sentenced him to the mandatory term of life in prison. Riley filed an appeal, which is docketed at 212 EDA 2015 and shall be addressed in a separate decision.

**outburst during trial and therefore the jury should not draw any adverse inference against [Appellant] from the incident?**

Appellant's Brief at 2.

Both of Appellant's assertions involve the trial court's jury instructions.

Our standard of review is well settled:

> In reviewing a challenged jury instruction, we must review the charge as a whole, and not simply isolated portions, to ascertain whether it fairly conveys the required legal principles at issue. We are reminded, as well, that a trial court possesses broad discretion in phrasing its instructions to the jury and is not limited to using particular language provided that the law is clearly, adequately and accurately presented to the jury.

***Commonwealth v. Bracey***, 831 A.2d 678, 684 (Pa.Super. 2003) (citations omitted). "A jury instruction will be upheld if it clearly, adequately, and accurately reflects the law." ***Commonwealth v. Smith***, 956 A.2d 1029, 1034-35 (Pa.Super. 2008) (*en banc*) (citation omitted).

In his first issue, Appellant asserts that he was entitled to a "theory of defense" jury instruction. Appellant's Brief at 12. Prior to the jury charge, defense counsel submitted the following for the trial court's consideration:

### DEFENSE THEORY INSTRUCTION

[Appellant] in this case contends he agreed and intended, only, to aid theft from [the victim's] motor vehicle, not the armed robbery of the person of the [victim] and that he picked up the 2 phones, 1 of which, happened to belong to the [victim], and both of which did not belong to him, merely, unrelated to the robbery, because the opportunity presented itself.

[Appellant] is not charged with the crimes of conspiracy to commit theft from [a] motor vehicle, theft from [a] motor vehicle, or theft of the cell phones.

- 4 -

It is the prerogative of the Prosecutor to choose the charges to bring against [Appellant].

The burden is on the prosecution to prove beyond a reasonable doubt all the elements of the crimes charged, specifically that [Appellant] agreed and intended to aid the armed robbery of the person of the [victim] and not only theft from [the victim's] motor vehicle, and theft of the 2 phones, 1 of which, happened to belong to the decedent, and both of which did not belong to him, merely, unrelated to the robbery, because the opportunity presented itself.

The defendant cannot be convicted of those charges if he was merely present with others, or even because he knew what the other or others planned and were doing.

On the other hand, if you find that the Commonwealth has proven all of the elements of all or some of the crimes charged, you must find [Appellant] guilty of those charges.

Unopposed Motion to Supplement the Record with Proposed Jury Instruction

Submitted by Appellant to Trial Court, 3/16/16, Exhibit A.[3]

Appellant argues:

The fact defense counsel was free to argue the defense theory was not sufficient to protect [his] due process right to a fair trial, since from the jury's point of view only the [trial] court was authoritative as to the law and therefore as to as to [Appellant's] criminal liability for attempt theft and conspiracy to commit theft.

Appellant's Brief at 12. He further asserts:

---

[3] We note that, following the trial court's charge to the jury, Appellant objected to the trial court's failure to give his proposed jury instruction. N.T., 9/15/14, at 209. *See **Commonwealth v. Pressley***, 584 Pa. 624, 887 A.2d 220 (2005). Moreover, we note that, on March 16, 2016, Appellant filed in this Court an unopposed Motion to Supplement the Record, and we grant Appellant's motion.

The fact that the Commonwealth chose not to charge [Appellant] with conspiracy and attempted theft from the car could hardly suffice to preclude the defense from presenting as a theory of defense that those crimes were all he was guilty of. Similarly irrelevant was the [trial] court's excuse that the attempt theft and conspiracy to commit theft were not lesser included offenses of the robbery. In short, the [trial] court failed to understand that the fact that [Appellant] could not actually be found guilty of attempt theft from the car and conspiracy to commit theft hardly meant that he could not present those crimes as an explanation for his conduct. Thus, the [trial] court's error greatly prejudiced [Appellant's] due process right to a fair trial.

*Id.* Finally, Appellant argues "the fact that [he] could not actually be found guilty of attempt theft from the car and conspiracy to commit theft hardly meant that he could not present those crimes as an explanation for his conduct." *Id.* at 18. Appellant's claim is meritless.

Appellant conflates his ability to present a defense at trial with the entitlement to a jury instruction regarding that theory. Appellant was in no way precluded from presenting his theory that he was "a two-bit opportunity thief, but not an armed robber and felony murderer." N.T., 9/15/14, at 18. The fact that Appellant was able to present such a defense does not, as a matter of constitutional due process, require the trial court to give Appellant's proposed "defense theory" instruction. *See Commonwealth v. Dykes*, 541 A.2d 1, 4 (Pa.Super. 1988), *appeal denied*, 553 A.2d 965 (Pa. 1988) (citation omitted) (rejecting the defendant's claim that the trial court failed in explaining to the jury his theory of the case in more detail; "[a]though it is the duty of the trial court when charging the jury to clarify the issues, it is not compelled to comment upon nor review the accused's

- 6 -

theory of the case."). *See also Commonwealth v. Lesko*, 15 A.3d 345, 397 (Pa. 2011) (explaining that "[i]nstructions to the jury are to be fair and accurate; they are not required to embody points that a party more properly should make in argument.").

In dismissing this claim, the trial court states that Appellant "never cited, and the Court is unaware of, any authority that requires the Court to lay out [a] defendant's theory of defense to the jury in the Court's instructions." Trial Court Opinion, 3/30/15, at 13. Within his brief, Appellant reiterates his assertion made during trial that *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) supports his claim, and that his entitlement to a "defense theory" instruction is authorized by United States Supreme Court's decision in *Mathews v. United States*, 485 U.S. 58, 63 (1998). Appellant's Brief at 14. Such reliance is misplaced, as *Chambers* involved the right to present a defense, while never specifically discussing jury instructions, and *Mathews*, unlike the present case, involved the recognized affirmative defense of entrapment.

Our review of the jury charge as a whole establishes that the trial court's instructions to the jury clearly, adequately, and accurately reflected the law applicable to the charges filed by the Commonwealth. *Smith*, *supra*. Indeed, following the conclusion of its instructions, the trial court at Appellant's request, specifically instructed the jury as follows:

> THE COURT: Okay. Ladies and gentlemen, just to make sure in an abundance of caution [that] there's no confusion,

you'll see when you look at the verdict sheet that the conspiracy charge its says conspiracy to commit robbery. That's the conspiracy charged in this case and to find defendant guilty of conspiracy in this case you must find that the Commonwealth has proved beyond a reasonable doubt that the conspiracy he's [sic] guilty of is a conspiracy to commit the crime of robbery.

Conspiracy to commit the lesser included offenses that were discussed in this case such as conspiracy to commit theft from a motor vehicle, that would not suffice. Okay. I think that's made clear by my instructions.

Also, of you forget, you'll see it's both in the written form of the instructions it says conspiracy to commit robbery and it says it on the verdict sheet as well.

N.T., 9/15/14, at 211-12. Thus, the trial court's instruction included the basic premise of Appellant's proposed "defense theory" instruction and allowed the jury to fully consider his defense. The fact that the entire proposed instruction was not used, or that it was phrased differently, does not entitle Appellant to relief. *Bracey*, *supra*.

In his remaining claim, Appellant asserts that the trial court erred in falling to instruct the jury properly with regard to co-defendant Riley's disruptive behavior during their joint trial. The trial court summarized the pertinent facts regarding this event, as well its subsequent instructions to the jury, as follows:

At trial, during the testimony of Derick Toliver, co-defendant Riley, in a fit of rage, threw all of his trial counsel's files onto the floor and attacked his trial counsel[.] During this confrontation, [Appellant] was not involved in the fight. The defendants, the witness, and the jury were removed from the room as the sheriffs responded to the attack. Thereafter, with the agreement of counsel, the Court ended the trial for the day and cleared the courtroom of everyone except the court staff. Then again, with agreement of counsel, the court brought out

the jury to give instructions regarding the incident without the defendants, defense counsel, or the prosecutor being present. The Court instructed the jurors that they were to put the episode out of their heads and not hold it against anyone involved with the case. This instruction was repeated multiple times. The Court also questioned the jurors to ensure that all of them could disregard the matter and that they were not extremely upset by the fight. These instructions were transcribed overnight and provided to the lawyers prior to trial resuming the next day.

The next day, all parties, including defense counsel, indicated that they had received the transcribed instructions and did not object to them or otherwise wish to amplify or correct the instructions. However, counsel for [Appellant] did request that the Court give the following additional instruction before the trial resumed: "I instruct you [Appellant] was not involved and you shouldn't consider it in any way against him. You must give each defendant your individual, independent, and separate consideration." Instead of giving that instruction, before the trial resumed the Court repeated to the jurors that they should put the incident out of their memory and not hold it against anyone involved with the case.

Trial Court Opinion, 3/30/15, at 18-19.

Within his brief Appellant asserts that he was denied a fair trial because "Riley's outburst was so violent and sudden at least some jurors may not have perceived the event clearly and very likely inferred that [Appellant] was involved in some manner." Appellant's Brief at 13. Additionally, Appellant contends that "the court's instruction to the jury not to draw inferences against 'anybody' permitted if not encouraged the jurors to infer that there was the possibility that [Appellant] was involved in some manner." *Id.* According to Appellant, "the [trial] court's instruction to the jury out of concern with trying to insure that Riley's right to a fair trial was

not prejudiced by his outburst was issued at the expense of [Appellant's] right to a fair trial[.]" Appellant's Brief at 13. We disagree.

Appellant's assertions are based inappropriately on speculation and conjecture.[4] It is well-settled that it is within the trial court's discretion to evaluate whether a defendant was prejudiced by a courtroom outburst and to determine the appropriate response. **Commonwealth v. Sanchez**, 36 A.3d 24, 47 (Pa. 2011). We agree with the trial court's conclusion that its "instruction, while not exactly what [Appellant] requested, was more than sufficient to be sure that no jurors would draw any inference adverse to [Appellant] from the fact that the co-defendant [Riley] was involved in a skirmish with his lawyer and the deputies." Trial Court Opinion, 3/30/15, at 19. The trial court further acknowledged that, during its final instructions, "the jury was clearly told to consider each defendant's case separately." **Id.** Appellant cites no authority for his proposition that if the outburst occurs during a joint trial, the trial court must provide a separate response tailored to each defendant. Thus, because the jury is presumed to abide by the trial court's instructions, **Commonwealth v. Tyson**, 119 A.3d 353, 360 (Pa.Super. 2015) (*en banc)*, Appellant's claim does not entitle him to relief. **See Commonwealth v. Philistin**, 53 A.3d 1, 33 (Pa. 2012) (concluding

---

[4] Although Appellant joined in co-defendant's motion for mistrial based upon this incident, he does not challenge its denial on appeal. **See** N.T., 9/10/14, at 243.

that, because the jury is presumed to follow the trial court's instructions, the defendant could not demonstrate that an outburst by spectator police officers in response the jury's guilty verdict tainted the penalty phase in a capital murder case).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2016